**IN THE UNITED STATES DISTRICT COURT**
**THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **JAMIE WILLIAMSON, Individually and On Behalf of All Others Similarly Situated,** | |
| **Plaintiff,** | **CIVIL ACTION NO. 4:17-cv-00430** |
| **V.** | **JURY TRIAL DEMANDED** |
| **SOUTHERN KOMFORT KITCHEN, LLC,** | |
| **Defendant.** | |

---

## RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

Defendant, Southern Komfort Kitchen L.L.C., files this its response to Plaintiff's motion for summary judgment and in support would show the Court as follows:

### I.    NATURE OF THE CASE

Plaintiff and those similarly situated are all former employees of Southern Komfort Kitchen L.L.C. (referred to as SKK or Defendant). They are seeking to recover unpaid minimum wages and tips they allege were misappropriated as a result of an invalid tip pooling arrangement. According to Plaintiff, because the SKK tip pool was invalid, SKK was not entitled to take the "tip credit" under the FLSA, and, as a result, was required to compensate Plaintiff at the full minimum wage rate for all hours worked during specific weeks listed in their damage model.

Plaintiff alleges that, at all times relevant to this litigation, SKK used a tip pooling system whereby all tips generated at the conclusion of each shift were combined into one fund and

1

redistributed to non-tipped employees, including some who worked in the kitchen.

Plaintiff seeks summary judgment that: 1) paying kitchen of "back of the house" personnel at any point during a shift invalidates not only that shift, but also every shift worked during that week's pay period; 2) SKK willfully violated the FLSA, 3) SKK did not have a good faith basis for utilizing the tip pool, and 4) Plaintiffs are entitled to back pay, tips and liquidated damages.

## II.   SUMMARY OF THE ARGUMENT

SKK initiated a tip pooling policy under the FLSA that allows it to take a tip credit for those employees working "front of the house" positions, such as "busser," "floater," "host," etc. Plaintiff's entire case is based solely on her allegation that sometimes an employee working in the kitchen was paid out of the tip pool. There is no allegation that a certain position SKK considers front of the house was actually an ineligible position.

Plaintiff is neither entitled to either a three year look back period nor liquidated damages for alleged sporadic violations of the tip pool. SKK educated itself on the requirements of the FLSA and implemented practices and policies to ensure compliance with the FLSA. A review of the Tip Pool Dispersement reports ("TPD"), earnings reports and individual paycheck stubs clearly demonstrates that SKK's review process worked. Of the 50 alleged violations listed by the Plaintiff in her exhibit A-1, almost all involve claims that the hours listed on the TPD include time worked in ineligible job positions. Plaintiff did not review or reference the employee's earning report or paycheck stubs to determine whether the tipped hours paid matched the TPD. Had she done so, she would have seen that SKK corrected the time and paid tipped hours only on eligible job positions. SKK's exhibit 2 sets forth correct hours worked in eligible positions and the hours paid on either the earnings report or paycheck stub. SKK's policies and procedures establish that it's actions were

2

not willful or reckless, but were a good faith effort to comply with the provisions of the FLSA.

## III.    SUMMARY JUDGMENT EVIDENCE

SKK relies upon and adopts the following summary judgment evidence as if set forth in full

herein:

| EX. NO. | DESCRIPTION |
|---------|-------------|
| 1 | Declaration of Kevin L. Hood |
| 2 | Fed. R. Evid. 1006 Summary of Records |
| 3 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 2/15/2015 - 2/21/2015. |
| 4 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 2/22/2015 - 2/28/2015. |
| 5 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 3/08/2015 - 3/14/2015. |
| 6 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 3/15/2015 - 3/21/2015. |
| 7 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 3/22/2015 - 3/28/2015. |
| 8 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 3/29/2015 - 4/4/2015. |
| 9 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 4/19/2015 - 4/25/2015. |
| 10 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 4/26/2015 - 5/2/2015. |

| 11 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 5/10/2015 - 5/16/2015. |
|---|---|
| 12 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 5/24/2015 - 5/30/2015. |
| 13 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 5/31/2015 - 6/6/2015. |
| 14 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 6/7/2015 - 6/13/2015. |
| 15 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 6/21/2015 - 6/27/2015. |
| 16 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 7/5/2015 - 7/11/2015. |
| 17 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 7/26/2015 - 8/1/2015. |
| 18 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 8/2/2015 - 8/8/2015. |
| 19 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 9/27/2015 - 10/3/2015. |
| 20 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 11/1/2015 - 11/7/2015. |
| 21 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 11/8/2015 - 11/15/2015. |

| 22 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 11/29/2015 - 12/5/2015. |
|----|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 23 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 1/3/2016 - 1/9/2016. |
| 24 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 1/10/2016 - 1/16/2016. |
| 25 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 1/17/2016 - 1/23/2016. |
| 26 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 1/24/2016 - 1/30/2016. |
| 27 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 4/24/2016 - 4/30/2016. |
| 28 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 5/8/2016 - 5/14/2016. |
| 29 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 5/22/2016 - 5/28/2016. |
| 30 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 5/29/2016 - 6/4/2016. |
| 31 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 6/26/2015 - 7/2/2016. |
| 32 | Explanation of hours from the Tip Pool Dispersement, time sheets, Job Assignment Change sheets, earning report and paycheck for the relevant pay period 9/11/2016 - 9/17/2016. |

| 33 | Declaration of Dwayne Spann |
|----|------------------------------|
| 34 | FLSA notice posters |
| 35 | Employee acknowledgment of FLSA tip pool policy |
| 36 | Tip Pool pay in records |
| 37 | Email from Mr. Hernandez |

## IV.    BACKGROUND FACTS

SKK was opened in 2011 as the realized dream of Dwayne Spann. Ex. 33.  He is the owner and general manager of this single restaurant enterprise. *Id.* at ¶3.   He works seven days a week. Prior to opening SKK he consulted with other business owners regarding the FLSA and how to handle employee tips and wages. *Id.*  This included what documentation was necessary to comply with the tip pooling provision under the FLSA. *Id.*

SKK established the tip pool in its restaurant according to the regulations of the FLSA.  *Id.* at ¶4.   It informed each employee that tipped employees would participate in the pool by contributing four per cent of their total sales into the pool. *Id.* This would be distributed to other front of the house supporting employees, such as bussers, floaters, bar backs, hosts, etc. *Id.*  It would not be shared with those working in the kitchen.  *Id.*

This case was initial filed by Christina Bryant, a former employee who has now passed, and included a number of causes of action including SKK's failure to inform her of the tip pool or its requirements.  See Plaintiff's Original Complaint.  SKK's policy was to inform each employee verbally and in writing of the tip pool.  Ex. 33.  The policy is included in the employee handbook, which every employee received, it was disclosed on Department of Labor posters hung where the employees met every day.  Ex. 34 and Ex. P to Plaintiff's motion at pg. 18..  Moreover, each employee signed an acknowledgment that they had been informed of the tip pool policy.  Ex. 33 and

32.  Likewise, Ms. Bryant alleged that SKK unlawfully took service charges on tips paid through credit card payments. See Plaintiff's Original Complaint.  Although SKK is allowed to take a three percent tip credit on tips paid by credit cards, it chose not to do so which resulted in the employees keeping more of their tips.  Ex. 33.

SKK employees are trained on a point of sales ("POS") system.  *Id*. at ¶6.  The employees clock in and out each day using the POS which logs their work hours, sales and job positions.  *Id*. Each employee has a default job title, such as "hostess," "server," "kitchen," or "bus."  *Id*.  This is the default job position when they first log onto the POS.  If they are going to work a different job position that day, they can change their job description on the POS and this is reflected on the electronic time sheets.  *Id.*  However, there is not always time to do this on the POS.  In those instances, Mr. Spann will write down the employee's name, the change in position, the date and the hours worked.  *Id.*

At the end of the week, the manager takes the notes and enters them into a worksheet referred to as the "Job Assignment Change" ("JAC")  sheets.  *Id.* at ¶7.  This represents SKK's efforts to keep track of dual position employees and account for their time worked in tip eligible positions. *Id*.  It is always possible for a note regarding a job reassignment to go missing or for a date to be incorrect.  *Id.*  SKK then references the JAC sheets and the employee's time sheets to create the Tip Pool Dispersement sheet ("TPD").  *Id.*  This is a reference to show the tipped hours worked during that one week period, the amount each employee should receive from the tip pool and an additional amount added to the tip pool by SKK .

The next step in the payroll process is to issue the paychecks.  The paychecks are processed by a third party processor, ADP.  Before it issues the checks, Mr. Spann reviews the time again and adjusts the hours if a mistake in job position was made or hours were misclassified.[1]  Id. at ¶8.

Employees receive their paycheck on Wednesday of every week.  Id.  Each paycheck covers work performed the prior Sunday through Saturday.  *Id.*  The pay stub shows the employee's hours, pay rate, wages earned, tips, and tax deductions for the relevant pay period.  *Id.* at ¶9. [2]  If an employee is paid tipped hours, the paycheck has a line for "tipped hours."  If an employee does not receive tips for that pay period, there is no "tipped hours" line on the check.  Id.  This information is also found in the employee's Earnings Report ("ER") which lists every paycheck received by that employee in chronological order.  *Id.*

SKK has prepared a response to Plaintiff's Rule 1006 Summary of Records.  It tracks the summary week by week and sets out the following information:

1.      The relevant time period by week,

2.      The employee allegedly working ineligible hours,

3.      The hours listed on the Tip Pool Dispersement report.  i.e. the number of eligible hours worked by that employee,

4.      The hours worked in a tip eligible position taken from the electronic time sheets ("TC"),

---

[1]      Mr. Spann does not call the POS administrator to adjust the electronic time sheets for every time or clock in/out error.

[2]  The pay stubs for February through December of 2016 also show the number of hours the employee was paid per job position.  *Id.* at ¶9.

5.      The hours from the Job Assignment Change sheet where the employee was moved to a tip eligible position,

6.      The "tipped hours" included for that pay period on the Earnings Report,

7.      The "tipped hours" included for that pay period on the paycheck stub.[3]

Based on the records reviewed in whole, there does not appear to be any violation of the FLSA and Plaintiff's motion should be denied.

## V.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. "An issue is material if its resolution could affect the outcome of the action." *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

All reasonable inferences are drawn in favor of the non-moving party. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There is no genuine issue of material fact if, even

---

[3]      The table reads as follows:
        TPD  20.00 (20 hours were worked as "other than kitchen")
        TS    20.00 (20 hours were logged in as "other than kitchen")
        JAC  5.0    (The employee worked "other than kitchen" for 5 hours)
        ER    25.00 (this is the total "tipped hours" on the Earnings Report)
        PC    25.00 (this is the total "tipped hours" on the paycheck stub)

If the ER or PC has 0.00 hours, that means that there were no "tipped hours" paid that pay period.

9

viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact

could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.

"[A] party seeking summary judgment always bears the initial responsibility of informing

the district court of the basis for its motion and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986).

If the moving party successfully carries its burden, the burden of production then shifts to

the non-moving party to direct the Court's attention to something in the pleadings or other evidence

in the record setting forth specific facts sufficient to establish that a genuine issue of material fact

does indeed exist. *Id.* at 322-25. Thus, the non-moving party may defeat a motion for summary

judgment by "calling the Court's attention to supporting evidence already in the record that was

overlooked or ignored by the moving party." *Id.* at 332-33. "[U]nsubstantiated assertions are not

competent summary judgment evidence." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th

Cir. 1998) (citing *Celotex*, 477 U.S. at 324)

## IV.   Arguments and Authorities

### A.   SKK has established its entitlement to the tip credit under the FLSA

SKK maintains a tip pool in accordance with the FLSA. It's wording tracks the FLSA

language.  Ex. 32.[4]  SKK employees are informed about the tip pool when they are initially hired.

Ex. 33 at ¶10.  They also receive a SKK handbook that sets out the tip pool policy in writing and

---

[4]      Plaintiff does not allege that the tip pool is unlawful or that it is set up in any
manner that varies with the FLSA language.

they sign an acknowledgment that they have been informed of the policy. *Id.* and Ex. 32. Ms. Bryant signed this acknowledgment. Ex. 32. The FLSA poster regarding the tip policy is posted in an area employees often gather on a daily basis. Ex. 33 at ¶10.

Tips are accounted for a the end of each shift (morning and evening). Id. Each employee calculates their total sales for that shift and the tips received, whether through credit card or cash. They are paid the $2.13 allowed under the FLSA and if their tips are sufficient, SKK takes a tip credit for $5.10 per hour bringing the employees hourly rates to $7.25 per hour. They are also required to pay 4% of their total sales into the tip pool. *Id.* at ¶11. The employee is allowed to retain tips in excess of the those two transactions. *Id.*

At the end of each shift, tips are self reported by the waitstaff and the manager on duty lists the name of the waitstaff, the amount self-reported in tips and the date. *Id.* at ¶12. These are put into a spreadsheet and totaled per day (sometimes by shift). *Id.*, and ex. 33. At the end of the week, the tip pool is calculated by the manager. Ex. 33 at ¶12. Each employee that assisted the servers and interacted with SKK's diners is qualified to participate in the tip pool. SKK reviews the time sheets, Job Assignment Change sheets, and any other information available to determine the hours worked in positions "other than the kitchen." *Id.* SKK drafts a "Tip Pool Disbursement" sheet which has four columns: 1) the employee's name, 2) hours worked, 3) Amount added to wage, and 4) Additional. *Id.*

The hours worked column is supposed to represent the hours worked in a tip eligible position. *Id.* However, the manager may sometimes write in total hours worked or transpose a number or name on the sheet. *Id.* at ¶13. The "Amount added to wage" column is the number of hours times $3.00. The three dollars is used by SKK to bring up the employee's rate of pay to their

usual hourly rate.  *Id.*  The fourth column "Additional" represents an additional amount of money paid into the pool by SKK to distribute to its employees.  *Id.*

The additional money added to the TPD is SKK's money and not taken from the server's tips.  Each week SKK had hundreds and sometimes thousands of dollars to the TPD to pay their employees extra.  The extra money paid SKK covers any error in the tipped hours calculated for an employee and should be considered in determining whether a violation occurred.

The Tip Pool Dispersement numbers are used by SKK to calculate paychecks prior to sending the information to ADP, its third party payroll service.  *Id.*  Errors in hours or calculations can be corrected at that time.  All tip pool dispersement money is paid by check through ADP.  *Id.* SKK limits the employees participating in the tip pool to eligible positions.  It does not use the tip pool to pay kitchen workers.  *Id*.

Based on the foregoing facts, SKK is entitled to the tip credit under the FLSA.

**B.  SKK is entitled to a tip credit under the FLSA**

The Fair Labor Standards Act (" FLSA" ) requires employers to pay employees a statutory minimum hourly wage.  29 U.S.C. § 206(a).  However, with respect to " tipped employees," employers are allowed to take advantage of a " tip credit" in order to meet the minimum wage requirement.  29 U.S.C. § 203(m)(1)-(2).  Specifically, the FLSA allows an employer to allocate a tipped employee's tips to satisfy a percentage of the statutory minimum wage requirement.  *Id.* A tipped employee is " any employee engaged in an occupation in which he 'customarily and regularly' receives more than $30 a month in tips."  29 U.S.C. § 203(f).  Pursuant to the tip credit rule, an employer may pay a tipped employee $2.13 an hour, but only if the employee makes at least minimum wage when wages made and tips earned are combined. *Id.*

Two prerequisites must be met prior to an employer's ability to utilize the tip credit: " (1) the employer must inform the employee of the provisions in section 203(m); and (2) all tips received by an employee must be retained by the employee, 'that [the tip credit provision] shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.' " *Pedigo v. Austin Rumba, Inc.*, 722 F.Supp.2d 714, 721 (W.D.Tex.2010) (quoting 29 U.S.C. § 203(m)).

SKK has met all of the requirements for taking a tip credit. It posted the FLSA notice in an area where the employees gather, it verbally told them of the policy when they were hired, it provided a written copy for their review, and each employee signed an acknowledgment that they understood the policy. Lastly, each server was required to self report 4% of their total sales each shift which put them on notice of the policy.

The policy does not vary from the FLSA standard and SKK is entitled to rely on the tip credit in determining and paying qualified employee's wages.

Plaintiff cites the declarations from a few former workers, many whose knowledge is dated. Ms. Bryant quit in January of 2016. Ms. Starnes knowledge ends in July of 2015. Ex. V to Plaintiff's motion. Mr. Wilkerson's knowledge ends in September of 2015. Ex. R to Plaintiff's motion. Ms. McDaniel ends in January of 2016. Mr. Hernandez' knowledge ends in May of 2016. Ex. S to Plaintiff's motion. Mr. Alexander in March of 2017. Ex. U to Plaintiff's motion. There is no declaration of an invalid tip pool past March 2017.

Mr. Hernandez' appears to have disavowed his declaration as of February 5, 2018 when he sent an email to Mr. Spann stating:

> I Jordan Hernandez was in no way going to push forward with the standing lawsuit against Dewayne and Becky spann and their establishment Southern Komfort

Kitchen. I was a manager for Becky and Dewayne for a while and they were nothing but caring and loving people. They took care of all their employees including me when I was down and out. Mr and Mrs. Spann run a very honest and trustworthy business.

Ex. 36.

Plaintiff also cite the records of Alex Martinez from March 22 - 28, 2015 and Christian Guerra from August 2-8, 2016 as examples of pool violations.

As shown in Exhibits 2 and 4, the TPD shows Alex Martinez worked 10.24 hours in tip eligible positions. Ex. 4 at 1229. However, plaintiff's calculations fail to consider the Earnings Report that shows the categorization of  Mr. Martinez' hours as "tipped hours" was corrected prior to his paycheck being issued.  Ex. 3 at 1591.

Mr. Guera's earnings report shows his main job was in the kitchen.  All of his paychecks did not include tipped hours.  His inclusion on the TPD was a mistake and the hours were similarly corrected prior to his paycheck being issued.

### C. SKK's policies and actions show that it acted in good faith and objective reasonableness in following the FLSA tip pool requirements.

To avoid liquidated damages, an employer must demonstrate " that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA...." 29 U.S.C. § 260. " [T]he employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness." *Reich v. S. New England Telecomm. Corp.,* 121 F.3d 58, 71 (2nd Cir.1997). To demonstrate such good faith, the " employer bears the burden of proving an honest intention to ascertain and follow the dictates of the [FLSA and] must also prove its position was objectively reasonable." *Hultgren v. Cty. of Lancaster, Neb.,* 913 F.2d 498, 509 (8th Cir.1990).

14

In satisfying this burden, " [i]gnorance alone will not exonerate the employer under the objective reasonableness test." *Williams v. Tri-Cty. Growers, Inc,* 747 F.2d 121, 129 (3rd Cir.1984). " It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them." *Reich,* 121 F.3d at 71. " The burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and 'double damages are the norm, single damages the exception.' " *Id.* (quotations omitted). " If the employer fails to come forward with plain and substantial evidence to satisfy the good faith and reasonableness requirements, the district court is without discretion to deny liquidated damages."

Prior to opening SKK, Mr. Spann consulted other business owners on how to properly establish and account for the tip pool under the FLSA.  He also reviewed the FLSA website and obtained the appropriate FLSA posters which are prominently displayed where the workers gather each day.  In addition, each employee is verbally informed of the tip pool policy when they are hired and given a copy of the policy in written form as part of their handbook.  Lastly, the employees sign an acknowledgment that they have read and understand the tip pool policy. Ex. 35.  The tip pool policy is as follows:

**Pay Structure**

Pay structures are based on the surrounding geogarphic area and fall within the guidelines of the FLSA. Any issues or clarification needed should be immediately brought tot the attention of your supervisor, who will contact management to address the employees concerns.

**Regular Pay**

Wait staff, tipped employees, will be paid at a rate of $2.13 an hour plus tips. All tips will be retained by wait staff except there will be tip out by wait staff 4% which is pooled and distributed to nonexempt

employees under FLSA guidelines assisting wait staff in their duties and caring for the guest needs. A tip credit will be claimed and will not exceed the difference between paid wage and FLSA minimum wage. Nonexempt employees such as bus staff, floaters, food runners, fixers, hostess, etc. will be paid $4.25 an hour. Monies from the tip pool will automatically e added to these employees pay rate, raising their hourly pay to FLSA minimum wage of $7.25. Any additional remaining tip pool will be paid out to nonexempt employees.

Exempt employees will be paid a minimum of $7.25 for hours worked, but are not eligible for any tip pool monies under FLSA guidelines.

Ex. P to Plaintiff's Motion at pg. 18.

Plaintiff cannot meet her burden to show "willfulness" on the part of SKK.  In fact, the evidence precludes such a finding or, at a minimum creates a fact issue.  After establishing the tip pool policy, SKK took specific and direct steps to ensure that the FLSA was being followed and that only eligible positions participated in the pool.  Those steps include setting up a POS system to track each employees job position during a shift.  If an employee was moved to/from an eligible tipped position, it was noted in a Job Assignment Change sheet.  At the end of the week, SKK would calculate the hours of those eligible employees and list them on the Tip Pool Dispersement sheet. Lastly, SKK management would recheck the Tip Pool Dispersement and hours and make corrections if the hours were incorrect.  The employee's Earning Report and Paychecks establish the amount that was actually paid to the employee per week.   Plaintiff's alleged violations are all based on the Tip Pool Dispersement number and not on the  actual hours paid as reflected on the employees earnings report and pay stubs.  Had she utilized the true numbers, it would have become clear that there were no violations during the two year look back period.

SKK implemented a tip pool policy with checks and balances to ensure it complied with the FLSA.  Plaintiff reviewed 104 weeks of tip pools, each week involved at least twenty employees which totals 2080 tip pool entries.  They allege about 45 violations or around a 2% occurrence rate. Plaintiffs are in error on most, if not all, of their allegations.  However, a 2% rate shows that SKK's methodology works and that it acted in good faith at all times.

**D.      Plaintiffs are not entitled to a three year limitations period because SKK did not act willfully with regard to the tip pool.**

Actions for alleged violations of the FLSA's minimum wage provisions " shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). As such, the FLSA provides for two potential limitations periods, the application of which turns on whether the FLSA violations were conducted " willfully."  Moreover, in addition to the limitations period, the issue of willfulness " can impact the computation of unpaid overtime compensation under the FLSA." *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 357 (4th Cir.2011).

In 1988, the Supreme Court of the United States addressed the meaning of willfulness under Section 255(a) of the FLSA. In *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), the Court held that in order to show willfulness, a plaintiff must show that the employer " either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *Id.* at 133, 108 S.Ct. 1677.  Mere negligence on the part of the employer with regard to compliance with the FLSA is not sufficient to prove willfulness. *Id.*

Reckless disregard " involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901, 937-38 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); see also, e.g., *Pinovi v. FDD Enters., Inc.*, 13 Civ. 2800, 2015 WL 4126872, at *4 (" Recklessness is defined as, at the least, an extreme departure from the standards of ordinary care, to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." (internal quotation marks and citation omitted)). "

If an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful." *Parada v. Banco Industrial de Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014) (internal quotation marks, citation, and brackets omitted); see also *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (explaining that a showing of " [m]ere negligence is insufficient" to establish willfulness).

The facts set forth above in response to the liquidated damage question and SKK's adherence to the FLSA requirements are equally responsive to this issue and are adopted into this section of the response as well.

SKK established the tip pool according to the FLSA and also put into place policies and procedures to ensure that only eligible employees participated. Given the extent that SKK reviewed and corrected its time records prior to issuing pay checks it cannot be said with any modicum of credulity that its actions were willful and a three year limitations period should be applied.

**E.        Plaintiffs failed to adequately prove their damages.**

An FLSA plaintiff must prove by a preponderance of the evidence that they "performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680,

686-86 (1946).  SKK does not dispute that a tip pool may be invalidated, in part, if the pool includes a position that does not customarily and regularly receive tips, such as a dishwasher or cook. However, Plaintiff takes the position that a calculation error by management that includes time for a non-eligible position the tip pool invalidates the tip pool credit for an <u>entire week</u>.[5]  Her damage calculations are all based on per week figures.  See Ex. W to Plaintiff's motion.  This position is not supported by any case law, statute or regulation.  If the tip pool is invalidated, it is only for the <u>shift</u> in which the non-eligible employee participated.

This issue was recently discussed in *Doris Metropolitan Black v. DMNO, LLC*, Civil Action 16-2708 (E.D. Louisiana May 21, 2018).  In *DMNO*, it was alleged that the general manager shared in the tip pool and the plaintiffs sought to invalidate the tip pool for the entire three year retroactive period.  *Id.* at *1.  The court conducted its own research on the issue and found a few cases that held the tip pool is invalidated for only the *shift* in which the non-eligible employee participates.  *Id.* at *2-3 (citing  *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 549 n.4 (6th Cir. 1999); *Bernal v. Vankar Enters., Inc.*, 579 F.Supp.2d 804, 810 (W.D. Tex. 2008), and *Salinas v. Starjem Rest. Corp.*, 123 F.Supp.3d 442, 468 (S.D.N.Y. 2015).

In *Myers*, the Sixth Circuit held that the defendant restaurant's occasional use of a "salad preparer," who was included in the tip pooling scheme, violated the FLSA, but only during the <u>work shifts </u>in which salad mixers were included within the tip pool.  *Myers*, 192 F3d at 500-51.(emphasis added).   In *Berna*l, the U.S. District Court for the Western District of Texas held that "<u>[t]o the</u>

---

[5]       Plaintiff initially states the correct standard in her "Summary of the Argument" section of her brief "...Plaintiff and Class Members are entitled to receive their full minimum wage, overtime, and misappropriated tips for the <u>shifts</u> where a violation occurred."  Plaintiff's Brief at page 2.(emphasis added).

extent Plaintiffs were not permitted to retain their tips to pay for shortages and unpaid tabs, Defendants disqualified themselves from taking advantage of the FLSA tip credit provisions." (Emphasis added). Lastly, in *Salinas v. Starjem Restaurant Corp.*, the U.S. District Court for the Southern District of New York held that the occasional inclusion of non-service employees in the defendant restaurant's tip pooling scheme violated the FLSA, but only during the times when the plaintiffs were working in tip eligible positions.

In calculating damages, the plaintiffs must provide specific detailed evidence as to the times or shifts they claim are invalid and show which plaintiff also worked that shift. The *Myers* court noted that this is usually done through discovery and analysis of the employer code-mandated records. *Myers*, 192 F3d at 500-51. In that case, the plaintiffs presented their damages through payroll records which showed the total hours worked by each employee on a given work day, but not the precise hours or shift worked. *Id.* The magistrate concluded that the plaintiffs failed to meet their burden of proof because they had available to them precise records from the defendant that could have "conclusively reconstructed" the days, hours and shifts the plaintiff worked with the invalid "salad shift." *Id.*

Plaintiffs have SKK's time records which show the specific times, shifts, hours, and positions of each employee. They are able to identify down to the day, shift, hour and minute when an infraction of the tip pool may have occurred. Plaintiffs should not recover any wages for time in which they did not work with an ineligible employee. That would result in a windfall for the plaintiff and unfairly penalize SKK.

Plaintiffs failed to meet their burden to prove that they performed work for which they were not properly compensated when they chose to present an overly broad damage model that does not meet the evidentiary standard in an FLSA case.  The motion should be denied in whole.

### VII.    Prayer

Southern Komfort Kitchen respectfully requests that the Court Deny the Plaintiff's Motion for Summary Judgment and for all other relief, in law and equity, to which it may be entitled.  In the alternative, should the Court find any violation of the FLSA that invalidates part of the tip pool, Defendant requests that the Plaintiff be required to detail the actual times and damages associated with the invalid shifts and that Defendant be allowed to respond to the claimed damages.

Respectfully submitted,

By:    /s/ Kevin L. Hood
        Kevin L. Hood
        Texas State Bar No.: 09941100
        Federal I.D. No. 14550
        **HUGHES ARRELL KINCHEN, L.L.P.**
        1221 McKinney, Suite 3150
        Houston, Texas 77010
        Email: khood@hakllp.com
        Telephone: (713) 228-2322
        Facsimile: (713) 228-0088
        **COUNSEL FOR DEFENDANT**
        **SOUTHERN KOMFORT KITCHEN, LLC**

CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on February 11, 2019.

        /s/ Kevin L. Hood
        Kevin L. Hood

21

## TABLE OF AUTHORITIES

**Cases:**

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Bernal v. Vankar Enters., Inc.*, 579 F.Supp.2d 804 (W.D. Tex. 2008) . . . . . . . . . . . . . . . . . . . 19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395 (5th Cir. 2008) . . . . 9

*Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351 (4th Cir.2011) . . . . . . . . . . . . . 17

*DIRECTV, Inc. v. Robson*, 420 F.3d 532 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Doris Metropolitan Black v. DMNO, LLC*, Civil Action 16-2708 (E.D. Louisiana May 21, 2018)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . 18

*Hultgren v. Cty. of Lancaster, Neb.*, 913 F.2d 498 (8th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . 15

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677 L.Ed.2d 115 (1988) . . . . . . . 17

*Myers v. Copper Cellar Corp.*, 192 F.3d 546 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Parada v. Banco Industrial de Venezuela, C.A.*, 753 F.3d 62 (2d Cir. 2014) . . . . . . . . . . . . . 18

*Pedigo v. Austin Rumba, Inc.*, 722 F.Supp.2d 714 (W.D.Tex.2010) . . . . . . . . . . . . . . . . . . . . . 13

*Pinovi v. FDD Enters., Inc.*, 13 Civ. 2800, 2015 WL 4126872 . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 10

*Reeves v. Sanderson Plumbing Prods., Inc.* , 530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Reich v. S. New England Telecomm. Corp.,* 121 F.3d 58 (2nd Cir.1997) . . . . . . . . . . . . . . . 14, 15

*Salinas v. Starjem Rest. Corp.*, 123 F.Supp.3d 442 (S.D.N.Y. 2015) . . . . . . . . . . . . . . . . . . 19, 20

*Williams v. Tri-Cty. Growers, Inc,* 747 F.2d 121 (3rd Cir.1984) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Young v. Cooper Cameron Corp.*, 586 F.3d 201 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 18

**FEDERAL STATUTES**

29 U.S.C. § 203(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

29 U.S.C. § 203(m)(1)-(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

29 U.S.C. § 206(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

29 U.S.C. § 255(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

29 U.S.C. § 260 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15