IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMIE WILLIAMSON, Individually and on behalf of all others similarly situated, § § § | | |
| Plaintiff, § § | | |
| v. § § | CIVIL ACTION NO. 4:17-00430 | |
| SOUTHERN KOMFORT KITCHEN, LLC, § § § | | |
| Defendant. § | | |

# **MEMORANDUM AND ORDER**

Before the Court in this collective Fair Labor Standards Act ("FLSA") lawsuit is Plaintiff Jamie Williamson's Motion for Summary Judgment ("Motion") [Doc. # 68]. Defendant Southern Komfort Kitchen, LLC ("SKK") has filed a response,[1] and Williamson has replied.[2] The Motion is now ripe for decision. Based on the parties' briefing, pertinent matters of record, and relevant legal authority, the Court **denies** Williamson's Motion.

## **I. INTRODUCTION**

Defendant Southern Komfort Kitchen, LLC operates a single restaurant in La Porte, Texas. During the time period relevant to this case, SKK paid its servers

---

[1] Response to Plaintiff's Motion for Summary Judgment ("Response") [Doc. # 71].

[2] Plaintiff's Reply in Support of Plaintiff's Motion for Summary Judgment ("Reply") [Doc. # 72].

an hourly wage of $2.13 and allowed them to keep a portion of tips they received from SKK's patrons. The rest of the servers' tips were then pooled and distributed to non-server employees.

In this FLSA collective action, Plaintiff Williamson and 33 former or current SKK servers who have opted into this lawsuit[3] (collectively, "Plaintiffs") assert that SKK's tip pool violated the FLSA. They contend that SKK impermissibly distributed their tips to "back of the house" positions—*i.e.*, kitchen staff—who are not eligible to receive tip pool funds. Williamson moves for summary judgment that SKK's tip pool distributions violated the FLSA; the violation was willful and lacked a good faith basis; and Plaintiffs are entitled to their full minimum wages, any misappropriated tips, and liquidated damages, totaling $75,631.84.

The Court **denies** summary judgment on all issues. A genuine factual dispute exists on the threshold question whether SKK distributed tip pool funds to "back of the house" positions in violation of the FLSA. Summary judgment on the

---

[3] The following Plaintiffs have consented to join this lawsuit: Katrina McDaniel, Michael Loneman, Craig Saucier, Robin J. Jenkins Campbell, Priscilla Williams, Jose Gutierrez, Aleks I. Gutierrez, Colleen Hehnly, Tammy Burrough Cornor, Eric Jardina, Rebecca Sanford, Vladimir Diaz-Sanchez, Jamie Williamson, Kimberly Palmer, Denton Kyle Alexander II, Kathleen Medina, Kelly Hollingsworth, Samantha Mitchell, Crystal Land, Sandra Lynn Thompson, Michael B. Dunn, Amber Anderson, Arlene Schillinger, Katrina Settle, Tamela Lynn Starnes, Cody Hartt, Melissa Mackey, Joey Hulsey, Victoria Perez, Thomas Jace Martin, Nikko Riggs, Michael Scott Calvert II, and Janet Allen. *See* Docs. # 21, # 22, # 23, # 24, # 25, # 26, # 27, # 28, # 29, # 30, # 31, # 33, # 34, # 36, # 37, # 38, # 39, # 40.

2

other issues is unwarranted because they are contingent on whether SKK violated the FLSA.

## II. BACKGROUND

### A. Factual Background

Founded in 2011, SKK operates a single restaurant in La Porte, Texas. Deposition of Dwayne Spann ("Spann Depo.") [Doc. # 68-16], at 34:18-20. Dwayne Spann is owner and general manager of SKK, and oversees day-to-day business operations. Declaration of Dwayne Spann ("Spann Decl.") [Doc. # 71-33], ¶ 3; Spann Depo. at 29:9-11, 34:23-25.

SKK staff is divided between "front of the house" and "back of the house" positions. Spann Depo. at 52:1-3. Front of the house positions include servers, bussers, hosts, to-go, floaters, food runners, customer service representatives, busser/floater combination, and bartenders. *Id.* at 52:4-8. Back of the house positions are kitchen staff, including cooks, salad makers, and dishwashers. *Id.* at 53:23-54:5.

SKK uses a "point of sale" ("POS") system to track its orders, sales, tips, and employees' time. Spann Decl. ¶ 6; Spann Depo. at 76:22-77:13. Employees access the POS system through several staff terminals located throughout the restaurant. Spann Depo. at 77:14-24. Each hourly employee is required to clock in

and out each day using the POS system, which logs his or her hours worked, sales, and job position. Spann Decl. ¶ 6.

When an employee logs on to the POS system, she selects the position she is working that shift. Spann Depo. at 80:15-24. The available POS positions are "server," "busser," "floater," "food runner," "to-go," "host," "customer service representative," "shift pay," "shift supervisor," and "kitchen." *Id.* at 81:19-82:11. All employees working in back of the house positions—that is, dishwashers, salad preparers, and cooks—clock in as "kitchen." *Id.* at 156:18-158:7.

On occasion, Spann reassigned an employee in the middle of a shift. *Id.* at 62:2-11. Rather than inputting the change in the POS system, Spann made a note of the change in position, the date, and the hours worked. Spann Decl. ¶ 7. At the end of the week, Spann would take those notes and enter them into a worksheet called the "Job Assignment Change" ("JAC") sheets. *Id. See, e.g.*, Employee Job Assignment Change, Week of: 1/04/2015 – 1/10/2015 [Doc. # 68-7], at ECF 1. Spann testified that, based on employee time sheets derived from the POS system and the JAC sheets, one would have a "clear and accurate picture" of which employees were working, for how long, and at what position. Spann Depo. at 109:17-110:2.

Employees received their weekly paychecks on Wednesdays. Spann Decl. ¶ 9. Each paycheck covered work performed the prior Sunday through Saturday.

4

*Id.* Paychecks were processed by a third-party processor, identified by Spann only as "ADP." *Id.* ¶ 8. Paychecks state the employee's hours, pay rate, wages earned, tips, and tax deductions for the relevant pay period. *Id.* ¶ 9. If an employee is paid for tipped hours, the paycheck has a line for "tipped hours." *Id.* If an employee does not receive tips for that pay period, there is no "tipped hours" line on the check. *Id.* This information is also found on employee "Earnings Records." *Id.* *See, e.g.*, Earnings Record for Jonan Manzanares [Doc. # 71-4], at ECF 10.

SKK's servers received an hourly wage of $2.13. *Id.* at 98:6-9. Other front of the house positions, like bussers, were paid $4.25 an hour. *Id.* at 98:17-23, 103:3-14. Hourly wages for back of the house positions varied depending on experience, but they were paid an hourly wage of at least $7.25. *Id.* at 98:11-16.

To comply with the FLSA's minimum wage requirements, SKK used a tip pool system for its front of the house positions. Spann Decl. ¶ 4. Each server was required to contribute 4% of his or her total sales to the tip pool. *Id.* ¶ 11. If 4% of the server's total sales was less than the server's total tips, the server would immediately be paid her tips in excess of 4% of her sales. Spann Depo. at 67:19-68:20. This would usually result in each server receiving an effective hourly wage of more than $7.25 an hour. *Id.* at 132:19-134:2. To determine payment each week to each employee participating in the tip pool, Spann created a weekly "Tip Pool Disbursement" ("TPD") sheet. Spann Decl. ¶ 7. *See, e.g.*, Tip Pool

5

Disbursement, 2/15 to 2/21/15 [Doc. # 68-3]. Each TDP sheet lists the tipped hours each employee worked, the amount each employee received from the tip pool to bring her hourly wage up to $7.25, any additional distribution, the total amount of tips pooled, and the total amount SKK paid out in tips. Spann Decl. ¶ 7. All front of the house positions were to receive distributions from the tip pool to bring their hourly compensation up to at least $7.25. Spann Depo. at 99:1-8. Employees working these positions would then receive an additional distribution from the tip pool based on several factors: the number of hours they worked that week, their experience, and the position they worked. *Id.* at 99:7-101:12. Spann states that all tip pool distributions were paid in the employees' weekly paychecks and evidenced in their employee Earnings Records. Spann Decl. ¶ 13.

B. **Procedural History**

This collective FLSA lawsuit was initiated against SKK on February 10, 2017.[4] Plaintiff's Original Collective Action Complaint [Doc. # 1]. This case was conditionally certified as a collective action on June 21, 2017,[5] and 33 of SKK's former and current servers have opted into the case.

---

[4] The original named plaintiff was Christina Bryant. Ms. Bryant has passed away and Jamie Williamson has been substituted as named plaintiff. *See* Hearing Minutes and Order dated January 7, 2019 [Doc. # 65]; Plaintiff's Second Amended Collective Action Complaint [Doc. # 66].

[5] *See* Stipulation and Proposed Order Re: Conditional Certification and Notice [Doc. # 19]; Order dated June 21, 2017 [Doc. # 20].

Plaintiffs are current and former employees of SKK who worked as servers for SKK at some point between June 21, 2014, through present. Plaintiff's Second Amended Collective Action Complaint [Doc. # 66], ¶ 40. Plaintiffs assert that SKK violated the FLSA regularly by sharing tip pool funds with employees working in "back of the house" positions who were not eligible to receive distributions from the tip pool. *Id.* ¶ 20. Plaintiffs contend that SKK's practice strips it of the right to rely on the FLSA's "tip credit" provisions, and thus must compensate Plaintiffs at the FLSA's full minimum wage and overtime rates. *Id.* ¶¶ 21, 41. Plaintiffs further assert that the FLSA's three-year statute of limitations applies to their claims because SKK's violations were willful and they are entitled to liquidated damages because SKK lacked a good faith basis for distributing tip pool funds to ineligible employees. *Id.* ¶¶ 23, 40, 42.

Plaintiff Williamson moves for summary judgment on the aforementioned issues.

## III. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a). Summary judgment on a claim or part of a claim is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." *Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 675, 680 (5th Cir. 2011) (quoting FED. R. CIV. P. 56(a)).

The Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). The Court "view[s] the facts in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor." *Salazar-Limon v. City of Houston*, 826 F.3d 272, 274-75 (5th Cir. 2016) (quoting *Deville v. Marcantel*, 567 F.3d 156, 163-64 (5th Cir. 2009)). The Court, however, is "not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010).

A party asserting that certain facts cannot be genuinely disputed "has the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings and materials in the record, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *See Deutsche Bank Nat'l Tr. Co. v. Cardona*, No. 7:16-CV-448, 2017 WL 2999272, at *1 (S.D. Tex. Apr. 20, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). *See also* FED. R. CIV. P. 56(c)(1). The moving party, however, "need not negate the elements of the nonmovant's case." *Coastal Agric. Supply,*

8

*Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). Instead, the moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003).

If the moving party meets this initial burden, the burden shifts to the nonmovant to set forth specific facts showing the existence of a genuine issue for trial. *See Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015) (citing *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010)).

Where the movant would bear the burden of proof at trial, the movant "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor." *See Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (first alteration in original).

## IV. **DISCUSSION**

Plaintiff Williamson moves for summary judgment on four issues. First, Williamson requests summary judgment that SKK's tip pool distributions violated the FLSA and consequently Plaintiffs are entitled their full minimum wage and any misappropriated tips. Second, Williamson seeks summary judgment that the FLSA's three-year statute of limitations applies because SKK's FLSA violation was willful. Third, Williamson requests summary judgment that Plaintiffs are

9

P:\ORDERS\11-2017\430MSJ.docx  190320.1356

entitled to liquidated damages because SKK lacked a good faith basis for distributing tip pool funds to ineligible employees. Fourth, Williamson seeks summary judgment that Plaintiffs are entitled to $26,864.62 in unpaid minimum wages, $403.55 in unpaid overtime wages, $10,547.75 in misappropriated tips, and $37,815.92 in liquidated damages, for a total of $75,631.84.

The Court **denies** summary judgment on all these issues. A genuine dispute of material fact exists on the threshold question whether SKK distributed tip pool funds in violation of the FLSA. Consequently, summary judgment on the three other issues is unwarranted.

### A. Legal Standard Regarding FLSA Treatment of Tip Pools

The FLSA requires employers to pay employees a minimum wage of $7.25 an hour. *See* 29 U.S.C. § 206(a)(1)(C). "The FLSA contains an exception that permits employers to pay less than the general minimum wage—$2.13 per hour— to a 'tipped employee' as long as the employee's tips make up the difference between the $2.13 minimum wage and the general minimum wage." *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015) (quoting 29 U.S.C.

§ 203(m)).[6] "This employer discount is commonly referred to as a 'tip credit.'" *Id.* (quoting *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 874 (8th Cir. 2011)).

"The employer [bears] the burden to prove its entitlement to the tip credit." *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 242 (5th Cir. 2016). To be entitled to the tip credit, the "general rule" is that all tips received by a tipped employee must be retained by that employee. *See Montano*, 800 F.3d at 188 (citing 29 U.S.C. § 203(m)). The FLSA "provides a limited exception to this rule." *See id.* at 188-89. The FLSA permits "the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2)(A). "If an employee is required to share tips with an employee who does not customarily and regularly receive tips, the employer may not legally take a tip credit." *Montano*, 800 F.3d at 189.[7] In such a case, "the employee is owed the full $7.25 minimum wage and reimbursement of the amount of tips that were improperly utilized by the employer." *See* U.S. Dep't of Labor, Wage & Hour Div., Fact Sheet # 15: Tipped Employees Under the Fair Labor Standards Act (FLSA) (rev. Apr. 2018).

---

[6] A "tipped employee" is "any employee engaged in an occupation in which he 'customarily and regularly' receives more than $30 a month in tips." *See* 29 U.S.C. § 203(t).

[7] The employer also must inform the employee of the tip credit provisions. *See* 29 U.S.C. § 203(m)(2)(A). It is undisputed that SKK informed its tipped staff of the tip credit provisions verbally and in writing.

11

The test for whether an employee is one who "customarily and regularly receive[d] tips" does not depend on whether the employee "actually received tips." *Montano*, 800 F.3d at 189.  Nor does the test depend on the employee's job title. *Id.* at 191.  Instead, "one's status as an employee who 'customarily and regularly receives tips' is 'determined on the basis of his or her activities.'"  *Id.* (quoting U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1997 WL 998047, at *2 (Nov. 4, 1997)).

In this case, neither party analyzes the activities of SKK's employees working in specific positions.  Williamson asserts that SKK's back of the house positions are not held by "employees who customarily and regularly receive tips."  SKK does not contest Williamson's assertion.  Instead, SKK argues that it did not distribute tip pool funds to back of the house positions.  The Court assumes without deciding that SKK's back of the house positions—*i.e.*, dishwasher, salad preparer, and cook—are ineligible for tips.  *See Montano*, 800 F.3d at 193 ("The central difference between employees who are traditionally tipped and those who are not is that the former work primarily in the front of the house where they are seen by and interact with customers, while the latter work primarily or exclusively in the back of the house."); *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 231 (5th Cir. 2011) (per curiam) ("Customarily, front-of-the-house staff like servers and bartenders receive tips. Back-of-the-house staff like cooks and dishwashers do

12

not, and thus cannot participate in a mandatory tip pool."); *Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 728 (W.D. Tex. 2010) ("Although the statute is not explicit on the issue, legislative history and DOL interpretations do expressly dictate that dishwashers and preparation cooks do not customarily and regularly receive tips.").

### B. A Genuine Factual Dispute Exists Over Whether SKK Distributed Tip Pool Funds to Ineligible Employees

There is a significant factual issue whether SKK distributed tip pool funds to employees for time they spent working in back of the house positions. If SKK is proven to have done so, SKK "may not legally take a tip credit" and its payment of sub-minimum wages to Plaintiffs would be a violation of the FLSA. *See Montano*, 800 F.3d at 189. The summary judgment record reflects that a genuine factual dispute exists on this question.

SKK has the burden "to prove its entitlement to tip credit." *See Steele*, 826 F.3d at 242. Thus, to withstand Williamson's Motion, SKK must demonstrate there is a genuine factual dispute whether it distributed tip pool funds to ineligible employees. *See Brandon*, 808 F.3d at 270.[8] But, as the moving party, Williamson

---

[8] Williamson erroneously contend that SKK's burden is to "establish beyond peradventure all of the essential elements of the . . . defense." Motion at 9 (internal citations omitted). This standard would apply if SKK were moving for summary judgment on its tip credit defense. But here SKK is *defending* against a
(continued…)

13

has the initial burden of identifying materials in the record to demonstrate the absence of a genuine factual dispute. *See Deutsche Bank Nat'l Tr.*, 2017 WL 2999272, at *1.

To meet this initial burden, Williamson relies on declarations of several SKK servers. *See* Motion at 7. These servers testify that in 2017 and earlier Spann stated that back of the house positions received tip pool distributions in 2017 and earlier.[9] Spann, in a sworn declaration, contradicts these averments, stating that tip pool funds were *not* shared with back of the house employees. He denies he ever told employees something different. Spann Decl. ¶¶ 4-5. At the summary judgment stage, the Court must "refrain from making credibility determinations or weighing the evidence," *see Delta & Pine Land*, 530 F.3d at 398-99, and the parties' conflicting sworn testimony demonstrates the existence of a genuine factual dispute.

Williamson also relies on SKK's business records to demonstrate that kitchen staff received tip pool distributions. *See* Motion at 7, 13-16. Williamson

---

(continued…)
summary judgment motion on its tip credit defense, not moving for summary judgment and dismissal of Plaintiffs' claims.

9   *See* Declaration of Christina Bryant [Doc. # 68-18], ¶¶ 7-8; Declaration of Jamie Williams [Doc. # 68-19], ¶ 4; Declaration of Jordan Hernandez [Doc. # 68-20], ¶¶ 7-8; Declaration of Katrina McDaniel [Doc. # 68-21], ¶ 4; Declaration of Kyle Alexander [Doc. # 68-22], ¶ 4; Declaration of Tamela Lynn Starnes [Doc. # 68-23], ¶¶ 4-5.

14

presents a summary of SKK's business records, comparing SKK's TPD sheets and employee POS time sheets supplemented by the JAC sheets. *See* Summary of Records [Doc. # 68-2]. Williamson contends these records indicate that SKK consistently distributed tip pool funds to employees for time spent working in back of the house positions.

SKK counters with Spann's Declaration. Spann avers that the TPD sheets do not reflect actual distributions, but are merely an intermediate step in the payroll process. Spann Decl. ¶ 13. Spann states he made errors in the TPD sheets. *Id.* He explains that when he created TPD sheets, he would sometimes, by mistake, write the wrong tipped hours for an employee or enter incorrect names on the sheet, but these errors were caught and corrected after SKK sent its information to its third-party payroll service. *Id.* Before issuing a paycheck, Spann avers he again checked the time entries and adjusted the hours if he found a mistake in the job position listed or noticed hours were misclassified. *Id.* ¶¶ 8, 13. Moreover, SKK contends that its employees' Earnings Records corroborate Spann's testimony. Spann testified that tip pool funds were distributed through employee paychecks and any distributions would be represented on the employee's paycheck and Earnings Records. *Id.* ¶¶ 5, 9. If an employee did not receive tips for a pay period, there was no line for "tipped hours" on her paycheck or Earnings Records. *Id.* ¶ 9. According to SKK, the employees' Earnings Records demonstrate that, for the

15

periods Williamson contends SKK's employees received impermissible tip pool distributions, employees were not paid for "tipped hours" in excess of their properly tipped hours. *See* Rule 1006 Summary of Records [Doc. # 71-2].

Inconsistencies among the TPD sheets, POS time sheets, employee Earning Records, and Spann's testimony reveal genuine factual disputes regarding whether the TPD sheets contained errors that SKK corrected before funds were distributed and whether ineligible employees received tips.[10] Williamson also argues that if SKK did not actually distribute tip pool funds to employees in the amounts reflected on the TPD sheets, then SKK must have retained those tip pool funds for itself. Even if this could be a reasonable inference in Williamson's favor, all reasonable inferences must be drawn at this stage against Williamson, the movant seeking summary judgment, and in SKK's favor. *See Salazar-Limon*, 826 F.3d at 274-75.

Genuine fact disputes exist over the accuracy of the TPD sheets, whether Spann corrected the errors, and whether SKK retained excess tip pool funds for itself.

---

[10] In a footnote, Williamson contends that some of the materials SKK cites in its Response were not produced before the discovery deadline. Reply at 5 n.4. The documents to which Williamson refers in its Reply do not establish that the Earnings Records were produced after the discovery deadline. Accordingly, the Court will consider the Earnings Records in adjudicating Williamson's Motion.

16

## V. CONCLUSION AND ORDER

For the foregoing reasons, threshold genuine factual disputes exist whether SKK distributed tip pool funds to ineligible positions in violation of the FLSA. Because the other issues on which Plaintiffs seek summary judgment depend on resolution of that question, it is hereby

**ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. # 68] is **DENIED** in its entirety.

SIGNED at Houston, Texas, this 20th day of **March, 2019.**

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

17

P:\ORDERS\11-2017\430MSJ.docx  190320.1356